**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| MICHAEL HOLTSINGER, | | No. CIV S-03-0732-MCE-CMK-P |
| Plaintiff, | | |
| vs. | | ORDER |
| TANYA VOROS, | | |
| Defendant. | | |

_____/

Plaintiff, a state prisoner proceeding with appointed counsel, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is Plaintiff's motion to compel production of documents (Doc. 258), Defendant's motion to compel expert witness disclosure (Doc. 262), Plaintiff's motion to compel Defendant's deposition (Doc. 267), a motion for protective order (Doc. 271), and Plaintiff's request for authority to incur costs (Doc. 257).  A hearing on all of these pending motions was held on June 11, 2009, before the undersigned. Attorney Carter White, appeared telephonically for Plaintiff; attorney Carrie Fredrickson appeared telephonically for Defendant.  Also present by telephone was attorney Tamera Colson from the Office of the Inspector General and attorney Kevin Hosn from the Attorney General's office.

/ / /

/ / /

**I.      PRODUCTION OF DOCUMENT REQUEST**

1

1            Plaintiff propounded a request for production of documents on Defendant, who

2 responded with objections as to eight of the requests.  The requests at issue in the motion to

3 compel are as follows:

> No. 1: "Any and all documents relating to the course of action
> taken by the California Department of Correction and
> Rehabilitation ('CDCR') against DEFENDANT mentioned in the
> Director's Level Appeal Decision Local Log No. 0207480, dated
> February 11, 2003.  See attached."

> No. 2: "Any and all documents relating to the investigative
> measures taken by CDCR that support the statement in the
> Director's Level Appeal Decision Local Log NO. 0207489, dated
> February 11, 2003, that the complaint of employee misconduct
> against DEFENDANT was substantiated."

> No. 3: "Any and all documents relating to the investigations
> conducted by the Office of Internal Affairs regarding
> DEFENDANT's conduct referred to in the Second Level Appeal
> Decision, Log No. HDSP-S-02-1257 dated December 3, 2002."

> No. 4: "Any and all investigative notes and documents that support
> the assertion that the complaint of misconduct by DEFENDANTS
> was substantiated mentioned in the First Level Appeal Decision,
> Log No. HDSP-S-02-1257 dated October 29, 2002."

> No. 6: "Any and all documents from the DEFENDANT's personnel
> file with CDCR that are in the DEFENDANT or her agent's
> control."

> No. 7: "The deposition and any recorded statements of Mr. Paul
> Magnan given in connection with the related lawsuit Holtsinger v.
> Briddle, CIV-S- 03-0732 MCE-GGH-P."[1]

> No. 8: "All documents relating to the medical care Plaintiff received
> from June 22, 2002, until present."

/ / /

> No. 9: "All requests for medical care submitted by Plaintiff,
> including but not limited to the CDCR Healthcare Service Request
> form 7362 submitted by Plaintiff Michael Holtsinger dated June 22,

---

[1]      The case Plaintiff was referring to was mis-cited in his request.  The case involving
Paul Magnan is actually Magnan v. Runnels, et al., CIV-S-03-1099-GEB-KJM-P.  Although
Plaintiff states that it is a "related lawsuit," Plaintiff's request for a related case order was denied.
Mr. Magnan apparently was Plaintiff's cell-mate and the other inmate injured during the incident.

2

2002 and June 25, 2002."

## A.    Arguments

Defendant raised a number of objections to these requests including that they were vague, ambiguous, and called for speculation; requested privileged information; are overly broad; calls for irrelevant information not reasonably calculated to lead to the discovery of admissible evidence; requests information protected by Defendant's right to privacy; requests documents not within Defendant's possession, custody or control; and the documents requested are equally available to Plaintiff.

### 1.    Requests One Through Four

The parties were previously ordered to meet and confer on the disputed discovery issues. As a result of the parties' meet and confer efforts, they were able to enter into a stipulation whereby Defendant will produce a copy of the CDCR's internal affairs investigation report, subject to certain protections. In addition, at the hearing of these motions, the parties agreed to stipulate that a copy of the crime incident report (form 837) would also be produced, subject to the same protections. The parties agreed to draft the stipulation and submit it to the court for approval. However, the court agreed to rehear this matter if the parties experience any difficulties, such as if the documents exchanged have too much information redacted, and conduct an *in camera* review of the unredacted version of the reports.

The agreement the parties have reached in regards to these two documents, was in response to requests one through four, listed above. Defendant argues these reports are the only documents she has that could be responsive to Plaintiff's requests one through four. Plaintiff is asking the court for an order requiring Defendant to make any possible and necessary requests to the CDCR in order to obtain additional documents. Defendant maintains that she has made such

/ / /

requests, and has been unable to obtain any additional documents that Plaintiff himself could not

1  and has not obtained.

2         2.       Request Six

3         Plaintiff believes, and has articulated to the court, that additional documents

4  including some of the supporting documents used in the internal investigation, are or should be

5  included in Defendant's personnel file.  Plaintiff has requested Defendant produce a copy of her

6  entire personnel file.  It also appears that Plaintiff has subpoenaed Defendant's personnel file

7  directly from the CDCR, and subpoenaed documents relating to the investigations conducted by

8  the Office of the Inspector General (OIG) in relation to the allegations of staff misconduct arising

9  from the June 22, 2002, incident.  Plaintiff argues that Defendant's personnel file may lead to

10 admissible evidence, such as documents addressing her job performance, attitude toward inmates,

11 and employee misconduct.  Defendant maintains that her entire personnel file is not relevant, is

12 protected by her right to privacy and is privileged under California law protecting the personnel

13 files of peace officers.   She proposes that if the court finds that her personnel file may be subject

14 to production, that the court conduct an *in camera* review of the entire file so that only those

15 documents which are relevant and not privileged are actually produced.

16        The OIG has also filed a motion for a protective order on the subpoena for

17 documents related to their internal investigation.  The OIG argues that the reports include medical

18 information about other inmates, administrative records (such as timekeeping and case aging

19 reports), as well as portions of Defendant's personnel file.  The OIG objects to producing the

20 documents as they are confidential and privileged.  The OIG further argues that the OIG would be

21 subject to sanctions by producing the documents without a court order.  In addition, it maintains

22 that disclosing the documents and information contained therein may jeopardize the safety and

23 security of the prison officials, other inmates and the institutions, and that the information

24 contained therein could be used for improper purposes, including blackmail, harm to families, or

25 discrediting officers during the performance of their duties.  The OIG recommends that if the

26 court decides disclosure is appropriate, that the court conduct an *in camera* review first, and only

4

1    require production of those documents which are relevant, and then subject to a protective order

2    and appropriately redacted.

3    　　　　Plaintiff opposes the motion for a protective order, arguing the OIG fails to show

4    good cause for keeping the material under seal, and that the OIG has not met their burden of

5    proving risk.

6    　　　　3.　　　Requests Eight and Nine

7    　　　　In addition to Defendant's personnel file, and the internal investigation records,

8    Plaintiff has also requested Defendant produce documents relating to his medical care (request

9    eight) and any requests for medical care he submitted (request nine).  Plaintiff previously

10   subpoenaed his entire medical and c-file from CDCR.  Defendant claims that although she

11   received copies of Plaintiff's files pursuant to his subpoena, she does not have any other

12   documents which would be responsive to Plaintiff's requests.

13   　　　　Plaintiff argues that although he did receive a copy of his files from the CDCR

14   pursuant to his subpoena, there are documents which should have been included in his files but

15   were not produced.  He is requesting the court order Defendant to turn over documents he

16   believes she has or could obtain from CDCR.  Defendant maintains that she has no ability to

17   obtain Plaintiff's records from CDCR, especially given that she is no longer an employee.  She

18   also argues that these records are more readily available to Plaintiff, and that if he believes CDCR

19   did not fully comply with the subpoena, that his remedy is against CDCR not Defendant.

20   　　　　4.　　　Request Seven

21   　　　　The final document request is for a copy of a deposition transcript from another

22   case (request seven).  In that other case, Magnan v. Runnels, et al., CIV-S-03-1099-GEB-KJM-P,

23   Plaintiff's cell-mate brought a separate action against several CDCR employees, including

24   Defendant Voros.  Plaintiff is requesting a copy of Mr. Magnan's deposition transcript, which he

25   believes Defendant has in her possession as she is a defendant in both matters.

26   　　　　Defendant states that she does not have any objection to providing Plaintiff with a

1   copy of Mr. Magnan's deposition transcript, so long as Plaintiff complies with the procedure set

2   forth in California Code of Civil Procedure Section 2025.570, or obtains written consent of the

3   parties to that other action.  Plaintiff objects to having to comply with Section 2025.570's

4   requirements due to the possibility of an extended time requirements.

5   **B.      Discussion**

6          Federal Rule of Civil Procedure 37(a) provides that upon "notice to other parties

7   and all affected persons, a party may move for an order compelling disclosure or discovery."

8                     A party seeking discovery may move for an order compelling an
                     answer, designation, production, or inspection . . if . . . a party fails
9                     to respond that inspection will be permitted - or fails to permit
                     inspection - as requested under Rule 34. . . . [E]vasive or
10                    incomplete disclosure, answer, or response must be treated as a
                     failure to disclose, answer, or respond.
11  Fed. R. Civ. P. 37(a)(3)(B), (4).

12         Generally, discovery may be obtained "regarding any nonprivileged matter that is

13  relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Relevancy in the discovery

14  context has been construed broadly to encompass any matter that bears on, or that reasonably

15  could lead to other matters that bear on, any issue that is in the case.  See Oppenheimer Fund,

16  Inc. v. Sanders, 437 U.S. 340, 352 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)).

17  Therefore, a discovery request directed at discovering a matter which is not reasonably

18  calculated to lead to the discovery of admissible evidence is not within the scope of Federal Rule

19  of Civil Procedure 26(b)(1).  See id.  Consistent with this rule, discovery is not limited to issues

20  raised by the pleadings, for discovery itself is designed to help define and clarify the issues.  See

21  id. at 351.  Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues

22  may arise during litigation that are not related to the merits.  See id.

23         Discovery may not be obtained regarding matters which are privileged.  See Fed.

24  R. Civ. P. 26(b)(1).  Thus, if a discovery privilege exists, information may be withheld, even if

25  relevant to the case.  See Baldridge v. Shapiro, 455 U.S. 345, 360 (1982).  The question of

26  privilege is determined by reference to the Federal Rules of Evidence.  See Campbell v. Gerrans,

1    592 F.2d 1054, 1056 (9th Cir. 1979).  Generally, questions of privilege "shall be governed by

2    the principles of the common law as they may be interpreted by the courts of the United States in

3    the light of reason and experience."  Fed. R. Evid. 501; see also Kelly v. City of San Jose, 114

4    F.R.D. 653, 655 (N.D. Cal. 1987) ("At the outset it is important to emphasize that in a civil rights

5    case brought under federal statutes questions of privilege are resolved by federal law.").  This

6    does not mean, however, "that federal courts should wholly ignore state laws, or rights

7    recognized by state governments, when analyzing privilege issues in civil rights cases."  Kelly, 114

8    F.R.D. at 655.

9              "[W]hen state privilege law is consistent, or at least compatible with, federal

10   privilege law, the two shall be read together in order to accommodate the legitimate expectations

11   of the state's citizens."  Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D. Cal. 1993)

12   (called into question by Jackson v. County of Sacramento, 175 F.R.D. 653, 654 (E. D. Cal.

13   1997), but see  Gearhart v. Solano County, 2008 WL 2560703 *2 (E.D. Cal. 2008)).[2]  As the

14   court in Kelly suggested, it is appropriate for the court to conduct a balancing test, slightly pre-

15   weighted in favor of disclosure, balancing the public interest in disclosure against the interest of

16   maintaining the security of the prison, its staff and inmates as well as the Defendant's right to

17   privacy.  See Kelly, 114 F.R.D. at 661-663.

18             To the extent Plaintiff is requesting documents Defendant claims are not in her

19   possession, he has not met his burden of proving otherwise.  Defendant acknowledges she has

20   two reports which would be responsive to Plaintiff's requests one through four.  The parties have

21   agreed that subject to the protections included in their stipulated protective order, to be

22   submitted to the court, Defendant will produce both of the reports (an internal affairs

23   ───────────────

24        [2]     The undersigned agrees with the court's analysis in Gearhart, which suggests that
     civil rights cases, brought under 42 U.S.C. § 1983, in essence present a mix of state and federal
     claims, and that state law is relevant especially "where one of the elements of the federal claim is

25   that a state actor was acting under color of state law when the federal right was violated." 2008
     WL 2560703 at *2.  In addition, "federal courts frequently look to state law for guidance in

26   § 1983 lawsuits."  Id.

1   investigation report and a crime incident report).  Beyond those two reports, Defendant claims

2   she has no other document which would be responsive to Plaintiff's requests which Plaintiff

3   does not already possess.

4          As to Plaintiff's sixth request, for a copy of Defendant's personnel file, the court

5   finds that while some of the information contained therein may be relevant and not privileged, a

6   good majority of the file may in fact be either irrelevant or privileged.  For example, Defendant

7   states that her personnel file will contain her application for employment, her background check,

8   medial treatment and request records, financial information, and personal identification

9   information.  None of this information would be relevant to Plaintiff's claims in this matter.  In

10  addition, the court finds that production of some of the information contained in Defendant's

11  personnel file may jeopardize the security of the prison or the safety of inmates and/or staff if

12  disclosed.

13         Accordingly, the court will not order the entire personnel file to be produced.  In

14  stead, the court will conduct an in camera review of the personnel file prior to ordering any of

15  the information contained therein to be produced.  Following the in camera review, the court

16  will issue an order as to what documents are to be produced.

17         Similarly, the court will not order the OIG to produce their file in its entirety

18  relating to the internal investigations of staff misconduct.  There may be information contained

19  therein which is either irrelevant and/or privileged, as well as information which may jeopardize

20  the safety and security of the prison, its employees, and/or other inmates.  The court will

21  likewise conduct an in camera review of the OIG file relating to the internal investigation into

22  the events of June 22, 2002.  The court will also issue an order as to what documents are to be

23  produced from the OIG file.

24  **       Finally, as to Plaintiff's request for a copy of the transcript from Mr. Magnan's

25  deposition, the court finds that absent a protective order, there is no reason as to why Plaintiff

26  should not be able to obtain a copy of Mr. Magnan's deposition transcript.  A deposition

1   transcript, although not a public document or record, and not generally filed with the court, may

2   in fact be filed and/or lodged with the court, and therefore made public, in relation to a properly

3   filed motion.  See Local Rule 5-133(j), 30-250.  In fact, the Federal Rules of Civil Procedure

4   used to provide for the filing of all discovery materials.  See Fed. R. Civ. Proc. 5(d), Advisory

5   Committee Notes, 1980 & 2000 amendments.  Discovery material are no longer to be filed in all

6   cases, but they may be filed where the parties rely on the information contained therein in

7   support of a properly filed motion.  See Fed. R. Civ. Proc. 5(d), Local Rule 5-133(j).  This

8   change in the Federal Rules was due to the costs imposed on the parties and the courts required

9   by filing the discovery material, not due to any concern regarding privacy.  See e.g., Hawley v.

10  Hall, 131 F.R.D. 578, 581-83 (D. Nev. 1990).

11          The court therefore finds there is no reason to prohibit Plaintiff from obtaining a

12  copy of Mr. Magnan's deposition transcript.[3]  In fact, Defendant does not object, so long as

13  Plaintiff obtains written consent from the parties involved in that case.  The court agrees that the

14  parties involved in Mr. Magnan's case should be provided notice of Plaintiff's request.  As such,

15  prior to Defendant providing a copy of the deposition transcript to Plaintiff, Plaintiff must

16  provide notice to all of the parties involved in that case of his desire to obtain a copy of the

17  transcript, and inform the parties thereto that if he receives no objection to his request within 10

18  days thereafter, he will be provided a copy of the transcript.  Once the time for objections has

19  passed, and assuming no objection has been received, Defendant is to provide Plaintiff a copy of

20  Mr. Magnan's deposition transcript.

21  / / /

22  / / /

23          **II.      PLAINTIFF'S EXPERT WITNESS DISCLOSURE**

24

25          [3]      The court notes that a copy of Mr. Magnan's transcript has in fact been lodged
    with the court in connection with a motion for summary judgment, apparently without being
26  subject to a protective order.  See Magnan v. Runnels, 03cv1099 GEB KJM, Doc. 120.

1    Pursuant to the scheduling order issued December 2, 2008, the parties were

2 directed to exchange their expert witnesses, pursuant to Rule 26(a)(2)(A) and (B), no later than

3 April 27, 2009.  The parties were warned that "[f]ailure to comply with these requirements may

4 result in the imposition of appropriate sanctions, which may include the preclusion of testimony

5 or other evidence offered through the expert witness."  (See Doc. 253, at 2).  The parties twice

6 stipulated to an extension of that deadline until May 20, 2009.  On May 20, 2009, Plaintiff

7 provided Defendant the name of his proposed expert witness, stating she will testify as to

8 causation and damages, but failed to produce his expert's written report pursuant to Rule

9 26(a)(2)(B).  He indicated in his disclosure that his expert had not yet completed a report, and

10 did not indicate when the report would be completed and available.  On the same day, May 20,

11 2009, Plaintiff submitted to the court a request for authority to incur the cost involved in

12 retaining a medical expert.

13    Rule 26(a)(2) specifically requires, in addition to the identity of any expert witness

14 the party may use at trial, that the disclosure "be accompanied by a written report - prepared and

15 signed by the witness . . . ." Rule 26(a)(2)(B).  It then details what must be included in the report,

16 including a complete statement of all opinions the witness will express and the basis and reasons

17 for them, the data and exhibits used in forming their opinion, the witness's qualifications, a list of

18 other cases the witness was an expert in, and the compensation to be paid to the witness.

19    Rule 37(c)(1) directs that if a party fails to identify a witness as required by Rule

20 26(a), "the party is not allowed to use that . . . witness to supply evidence on a motion, at a

21 hearing , or at a trial, unless the failure was substantially justified or is harmless."  Other sanctions,

22 in addition to or in leu of the above, include payment of reasons expenses, informing the jury of

23 the party's failure, or any other sanction listed in Rule 37(b)(2)(A)(ii)-(vi) (including directing

24 facts be taken as established, issue/evidence preclusion, striking pleadings, staying proceedings,

25 dismissal, and default judgment).  The issuance of sanctions for a party's failure to disclose is in

26 the court's discretion.  See Von Brimer v. Whirlpool Corp., 536 F.2d 838, 844 (9th Cir. 1976).

1    While bad faith may be relevant to the determination of what sanctions are appropriate, sanctions

2    are appropriate even for negligent failures.  See Marquis v. Chrysler Corp., 577 F.2d 624, 642

3    (9th Cir. 1978).

4            Plaintiff concedes that his designation of expert could be characterized as last-

5    minute.  He claims, however, that he has a good explanation for his late designation, specifically

6    that he did not anticipate the Defendant's expert.  He does not admit that his disclosure was

7    inadequate, but does state that with only minor adjustment to the schedule, "his expert can

8    complete a report and be available for deposition well in advance of trial."

9            Plaintiff's excuse does not meet the level of "substantially justified."  Failing to

10    anticipate a defense expert, and waiting until Defendant discloses her expert, are insufficient

11    reasons to meet the "substantially justified" standard.  Although it does not appear the failure to

12    disclose was willful, it also does not appear that the nondisclosure resulted from factors beyond

13    the party's control.  Accordingly, the court finds sanctions are appropriate.

14            Defendant requests as sanctions that Plaintiff be precluded from using any

15    information at trial that he should have disclosed on May 20, 2009, preclude Plaintiff's expert

16    witness from testifying at trial, direct that designated facts be established as the Defendant claims,

17    and/or prohibit the Plaintiff from supporting designated claims that would be encompassed within

18    his Rule 26(a) disclosure.

19            The court does not find it appropriate to go so far as designating fact be

20    established as the Defendant claims.  It is appropriate, however, to not allow Plaintiff's expert

21    witness to provide testimony in this case.  Accordingly, Plaintiff's belated request to incur cost

22    will be denied as moot.

23    / / /

24    / / /

25            **III.    DEFENDANT'S DEPOSITION**

26            Plaintiff states that he properly noticed Defendant's deposition to occur on June

5, 2009, in Susanville, California.  However, because Defense counsel has apparently lost contact with her client, counsel informed Plaintiff that Defendant would not be attending her deposition as set.  Defendant does not claim the deposition was improperly notice, or that there were any other defects in setting her deposition.  The only reason for her failure to appear at her scheduled deposition appears to be Defendant's failure to cooperate in the resolution of this case.

Rule 30 provides that a party may depose any person, upon reasonable written notice, without leave of court except where the deponent has already been deposed in the case, or other limited exceptions.  Fed. R. Civ. P. 30(a)(1), (2).  Where a party fails to attend a properly noticed deposition, the court has the power to issue sanctions.  See Fed. R. Civ. P. 37(d).  Here, Plaintiff is not requesting sanctions.  Instead, Plaintiff is requesting a court order to compel Defendant's attendance at a deposition, set in Davis, California, and an order directing that if Defendant fails to appear at her deposition as ordered, the court will reinstate the order of default against here.

The court finds it appropriate to issue an order compelling Defendant's appearance at a deposition.  However, the court is reluctant to include in that same order that if she fails to attend the deposition, the default will be reinstated.  Instead, the court will caution Defendant that if she fails to attend and participate in her deposition, as required by this order, sanctions will be ordered, including the possibility of terminating sanctions.  The appropriate sanctions will be addressed at a later date, if in fact Defendant fails to appear.

The court will therefore order Defendant to appear at a deposition on June 30, 2009, at 10:00 a.m., at the offices of Barbara Como Reporting, 400 Capitol Mall, Suite 1100, Sacramento, California, 95814.  The telephone number to that location is (916) 447-6364.  Plaintiff's failure to appear will result in additional sanctions, including the possibility of reinstating the order of default against her.

### IV.    PLAINTIFF'S DEPOSITION

The parties previously agreed to allowing Defendant to take Plaintiff's

1   deposition, even though he had previously been deposed by the other defendants prior to

2   Defendant Voros' appearance in this matter.  However, given Defendant's failure to cooperate in

3   the resolution of this matter, and the failure of her appearance at her deposition, Plaintiff has

4   requested that his second deposition not be conducted until after Defendant is deposed.

5         The court agrees that it is appropriate, especially as Plaintiff has already been

6   deposed in this matter, that until Defendant cooperates in this case and attends her deposition,

7   Plaintiff is relieved of his obligation to attend a second deposition.  If, however, Defendant does

8   appear at her deposition, as noticed above, Defendant will be provided an opportunity to depose

9   Plaintiff.  The parties have agreed to a tentative date for Plaintiff's deposition of July 13, 2009.

10              **V.       SCHEDULE MODIFICATION**

11        The current scheduling order sets a discovery cutoff date of June 15, 2009, and a

12  dispositive motions deadline of July 15, 2009.  Based on the above, the court finds it necessary

13  to extend these deadlines slightly.  Specifically, the deposition of Defendant is now set for June

14  30, 2009, and the court has allowed Plaintiff's deposition to be postponed until after Defendant's

15  deposition is conducted.  As such, the discovery deadline, as to these depositions only, will be

16  extended until July 31, 2009.

17        In addition, Defendant has filed a motion for summary judgment, set for hearing

18  on July 9, 2009.  Plaintiff's opposition to that motion would be due by June 25, 2009.  However,

19  as the motion relies on Defendant's declaration, Plaintiff should be allowed to take Defendant's

20  deposition prior to responding to the motion.  As that deposition is not set until June 30, 2009,

21  Plaintiff will not be able to respond to the motion as currently set.  Accordingly, the hearing on

22  the motion for summary judgment will be taken off calendar, and will be reset upon completion

23  of the depositions.  Plaintiff's opposition deadline to Defendant's motion for summary judgment

24  will be set at the status conference, set below.  However, the court anticipates setting the motion

25  for hearing on its August 27, 2009, civil law and motion calendar.  Accordingly, Plaintiff should

26  anticipate having his opposition on file by August 13, 2009.

1    Given the uncertainty in this case, based especially on Defendant's apparent

2  refusal to participate, the court finds it necessary to set this matter for a status conference

3  following the dates set above for the Defendant's deposition.  Accordingly, the court will set a

4  status conference for July 23, 2009, at 11:00 a.m., before the undersigned in Redding,

5  California.  Telephonic appearances will be permitted.  In addition, the court will request the

6  parties file a joint status report identifying any remaining discovery issues, especially

7  Defendant's deposition, and the status on the motion for summary judgment, including how

8  much time Plaintiff will need to file an opposition thereto, on or before July 20, 2009.

9    VI.    CONCLUSION

10    Based on the foregoing, IT IS HEREBY ORDERED that:

11    1.    Plaintiff's motion to compel production of documents (Doc. 258) is

12  granted in part;

13    2.    Pursuant to the parties' stipulations, Defendant will produce two

14  additional reports in response to Plaintiff's request for production of documents, subject to the

15  stipulated protective orders the parties will submit to the court for approval;

16    3.    If, following exchange of these two additional reports, the parties

17  encounter additional conflict relating to the documents, the court will rehear this matter and

18  conduct an in camera review of the reports;

19    4.    The court will conduct an in camera review of Defendant's personnel file,

20  prior to the production of any documents contained there, and will issue a separate order as to

21  what documents are to be produced;

22    5.    The OIG's motion for protective order (Doc. 271) is granted to the extent

23  that the court will also conduct an in camera review of the investigation file prior to ordering

24  any documents contained therein produced;

25    6.    Plaintiff's request for a copy the transcript from Mr. Magnan's deposition

26  in the case Magnan v. Runnels, et al., CIV-S-03-1099-GEB-KJM-P, is granted provided that

1   Plaintiff provide notice to all of the parties involved in that case of his desire to obtain a copy of

2   the transcript, and inform the parties thereto that if he receives no objection to his request within

3   10 days thereafter, he will be provided a copy of the transcript.  Once the time for objections has

4   passed, and assuming no objection has been received, Defendant is to provide Plaintiff a copy of

5   Mr. Magnan's deposition transcript.

6           7.      Plaintiff's requests for copies of documents related to his medical care and

7   requests for medical care are denied;

8           8.      Defendant's motion to compel expert witness (Doc. 262) is granted and

9   Plaintiff is precluded from having his expert witness provide testimony at trial as a sanction for

10  his failure to disclose pursuant to Federal Rule of Civil Procedure 26(a);

11          9.      Plaintiff's untimely request to incur costs (Doc. 257)  is therefore denied

12  as moot;

13          10.     Plaintiff's motion to compel Defendant's deposition (Doc. 267) is granted;

14          11.     Defendant is ordered to appear at a deposition on June 30, 2009, at 10:00

15  a.m., at the offices of Barbara Como Reporting, 400 Capitol Mall, Suite 1100, Sacramento,

16  California, 95814.  Plaintiff's failure to appear as ordered will result in the imposition of

17  additional sanctions, including the possibility of reinstating the order of default against her;

18          12.     Plaintiff is relieved of his obligation to attend a second deposition, until

19  such time as Defendant attends her deposition.  If Defendant's deposition occurs as set above,

20  Defendant will be provided an opportunity to depose Plaintiff, tentatively set for July 13, 2009;

21          13.     The scheduling order in this case is modified as to the following:

22                  a.      The discovery deadline as to the parties' depositions only is

23                          extended until July 31, 2009;

24  / / /

25                  b.      The hearing on the pending motion for summary judgment,

26                          currently set for July 9, 2009, is taken off calendar, to be reset at the status

15

1    conference;

2    c.    A status conference is set in this case for July 23, 2009, at 11:00

3    a.m., before the undersigned in Redding, California; and

4    d.    The parties are to file a joint status report, as detailed above, on or

5    before July 20, 2009.

6

7

8    DATED:  June 23, 2009

9    _____
     **CRAIG M. KELLISON**
10   UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26