UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL HOLTSINGER,                    No. 2:03-cv-00732-MCE-CMK

    Plaintiff,

  v.                                   **FINDINGS OF FACT AND**
                                                              **CONCLUSIONS OF LAW**
TANYA VOROS,

    Defendant.

----oo0oo----

Plaintiff, a state prisoner, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges he was denied medical treatment by Defendant Voros following an assault by at least four other inmates. As a result of that assault, Plaintiff claims he sustained injuries and was exposed to the blood of another inmate.

Following Defendant Voros' failure to appear for her deposition, fact establishing sanctions were issued finding liability on her part for deliberate indifference towards Plaintiff's serious medical needs. The only issue remaining for trial are the damages, if any, owed to Plaintiff.

1

Plaintiff seeks both compensatory and punitive damages for Eighth Amendment violations pursuant to 42 U.S.C. § 1983, as well as reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

The matter came on for court trial on March 15, 2010, against Defendant Tanya Voros, only inasmuch as Plaintiff had previously dismissed his claims against other Defendants. Carter C. White, Supervising Attorney, Victoria Baiza, Certified Law Student, and Christina Ahn, Certified Law Student, appeared on behalf of Plaintiff. No appearance was made on behalf of Defendant Tanya Voros.

After hearing the evidence and arguments, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The following facts were deemed established and found to constitute deliberate indifference on the part of Defendant Voros as a discovery sanction for failure to appear at her deposition:

a. On June 22, 2002, Defendant was on duty as a Medical Technical Assistant at High Desert State Prison, Susanville, California.

b. In Defendant's working capacity, she was responsible for the health care needs of inmates who received injuries in Administrative Segregation, referral of inmates to the emergency room, sick call rounds in the housing unit, dispensing of medication, collection of medical care request forms, and decontamination of inmates exposed to blood and basic inmate care needs.

c. At all times relevant to the events described herein, Defendant acted under color of state law.

d. At all times relevant, Plaintiff was incarcerated at High Desert State Prison, Susanville, California.

2

e. At all times relevant, Plaintiff's cellmate, Paul Magnan, was incarcerated at High Desert State Prison, Susanville, California.

f. On June 22, 2002, at approximately 1300 hours, after entering the exercise yard, Plaintiff and Magnan were assaulted. Magnan was assaulted by two inmates resulting in his loss of consciousness and bleeding from the head. Plaintiff was simultaneously assaulted by four inmates resulting in bodily injury.

g. Plaintiff was placed in a D7-B Section holding cage after being assaulted.

h. Defendant approached Plaintiff while he was in the holding cage, at which time Defendant became aware of Plaintiff's injuries.

i. Defendant was a responding staff member who saw that Plaintiff needed medical treatment.

j. Defendant, producing only a 3" x 3" yellow "Post-It" pad, asked Plaintiff for his name and CDC number. Defendant stared at Plaintiff's injured face and asked who hit him.

k. Defendant instructed Plaintiff to turn around and lift up his shirt. After Plaintiff struggled to lift up his shirt, he turned around and found that Defendant had left the vicinity and took no steps to provide Plaintiff medical care nor made contact with him thereafter regarding his injuries.

l. On June 23, 2002, approximately 27 hours after Plaintiff was assaulted, Defendant failed to transfer Plaintiff to High Desert State Prison's Central Treatment Center.

m. On June 29, 2002, Defendant came into contact with Plaintiff. While Defendant was at Plaintiff's cell door, he attempted to reiterate his medical needs to Defendant. Defendant responded, "The Doctor is aware of you two" (referring to Plaintiff and his cellmate) and walked away.

n. On June 22, 23, 25, 2002, Plaintiff continued to contact medical technical assistants regarding his injuries and urgent need for medical treatment.

o. Defendant's actions and inactions caused Plaintiff to be deprived of any medical examination for 59 days after the June 22, 2002 incident. Defendant's deliberate indifference to Plaintiff's serious medical needs caused this delay.

3

The only facts remaining for adjudication at trial concern the amount of harm Plaintiff suffered as a result of Defendant's deliberate indifference, and the amount of damages resulting therefrom. In that regard, the Court finds as follows:

    p. Immediately after the assault, Yard Gunner J. Delgado ordered Plaintiff to drag Magnan off the yard. Plaintiff complied with Yard Gunner Delgado's orders but as Plaintiff dragged Magnan, Plaintiff was bleeding from his legs and knees and was exposed to Magnan's blood. As a result of coming into contact with his cellmate's blood, Plaintiff was fearful of being exposed to Hepatitis C and HIV. Plaintiff testified that he thought about it constantly in the beginning, but as the months continued, he thought about it less and less. Eventually, it was only a sporadic thought.

    q. Plaintiff testified he washed his wounds using a milk carton. He filled it with water from the sink and cleaned his injuries. He also resorted to self-treatment such as scrubbing his knees with a scrub pad.

    r. Plaintiff also testified that he threw away his boxers, shoes, and socks because they were covered in blood. Plaintiff believed that it was the blood of his cellmate.

    s. Nurse Kismet A. Mayo testified that Defendant had a duty to wash the blood off of Plaintiff and disinfect any wounds. She also had a duty to inquire as to the origin of the blood.

    t. Plaintiff stated that on the first night, his pain was a nine out of ten. He said his head felt like it was on fire, he had pain in his legs, his mouth was swollen, and he had trouble walking. In addition, he stated that he went the first night without any pain reliever.

    u. Plaintiff testified that the week after the incident, the pain dwindled to an eight out of ten and by July 2002, the swelling had reduced.

    v. Paul Magnan testified that as a result of his pain after the incident, Plaintiff fell in the shower and in the exercise yard.

///

4

w.  Plaintiff testified that he was tested for HIV and Hepatitis C on July 25, 2002 and August 15, 2002. He stated that he was tested again in February 2003, June 2003, and at the end of 2003. His results came back negative.

x.  Nurse Kismet A. Mayo testified that she conducted the in-prison appeal for Plaintiff. She confirmed that Defendant did not follow procedures. She failed to fill out the proper documentation and failed to get him the proper medical attention the day of the incident.

y.  Plaintiff claims he continued to be in pain in his entire upper body, head, knee, neck, back, shoulder, wrist, and elbow.

## CONCLUSIONS OF LAW

**A. Liability**

1. A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Thus, to violate the Eighth Amendment, a prison official must have a sufficiently culpable mind." See id. Here, Defendant Voros was previously found liable by the magistrate judge. The magistrate judge found that Defendant Voros was deliberately indifferent to Plaintiff's injury, giving rise to liability. See Estelle v. Gamble, 429 U.S. 97, 105 (1976).

///

///

5

1   2.  Given this sanction imposed by the magistrate judge in
2 regards to liability, this finding is akin to default.  However,
3 even upon entry of default, the complaint's factual allegations
4 regarding liability are taken as true, but allegations regarding
5 the amount of damages must be proven.  <u>Dundee Cement Co. v.</u>
6 <u>Howard Pipe & Concrete Prods.</u>, 722 F.2d 1319, 1323 (7th Cir.
7 1983)(citing <u>Pope v. United States</u>, 323 U.S. 1, 12 (1944) and
8 <u>Geddes v. United Financial Group</u>, 559 F.2d 557, 560 (9th Cir.
9 1977)).  "The general rule of law is that upon default the
10 factual allegations of the complaint, except those relating to
11 the amount of damages, will be taken as true."  <u>Geddes</u>, 559 F.2d
12 at 560.  Thus, the Court must make an independent determination
13 of the sum to be awarded.
14   3. Although the Court finds that Plaintiff has made a good
15 faith effort to prove damages, the evidence presented at the
16 hearing was insufficient to warrant entitlement of the $25,000 in
17 compensatory damages and the $25,000 in punitive damages sought
18 by Plaintiff.  Instead, on the basis of the evidence offered at
19 trial, the Court finds that Plaintiff is entitled to damages as
20 follows:

22   **B.   Compensatory Damages**

24   "Compensatory damages may include not only out-of-pocket
25 loss and other monetary harms, but also such injuries as
26 impairment of reputation..., personal humiliation, and mental
27 anguish and suffering."
28 ///

6

1  Memphis Community School District v. Stachura, 477 U.S. 299, 307
2  (1986) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350
3  (1974)) (internal quotations omitted).  Mental and emotional
4  distress, including mental suffering and emotional anguish, is a
5  compensable injury.  Carey v. Piphus, 435 U.S. 247, 264 & n. 20
6  (1978).  "Although essentially subjective, genuine injury in this
7  respect may be evidenced by one's conduct and observed by
8  others."  Id. at 264 & n. 20.  Further, physical pain and
9  suffering may support an award of compensatory damages.  Jackson
10 v. Crews, 873 F.2d 1105, 1109 (8th Cir. 1989)
11      Plaintiff alleges severe pain in his entire body, head,
12 knee, neck, back, shoulder, wrist, and elbow following the
13 June 22, 2002 injury.  Plaintiff further alleges that the 59-day
14 delay in medical treatment exacerbated Plaintiff's injuries,
15 prolonged his pain and suffering, and caused him damages.
16      Despite his claims that his injuries were severe, Plaintiff
17 produced no corroborating evidence to support his own assertions
18 in that regard.  There was no testimony with respect to a medical
19 diagnosis.  The only evidence regarding the extent of his
20 injuries came from Plaintiff's own observations and the
21 observations of Plaintiff's cellmate.  Nurse Kismet A. Mayo could
22 only state what a third party individual witnessed.  Further, the
23 video submitted by Plaintiff documenting the fight shows a short
24 scuffle between Plaintiff and the other men in the yard in which
25 Plaintiff falls to his knees on two occasions.  The video does
26 not show "severe injuries" warranting an award of $25,000.  The
27 Court finds that Plaintiff is entitled to $500.00 in compensatory
28 damages.

1    **C.   Punitive Damages**

     While compensatory damages are mandatory once liability is found, punitive damages are discretionary. <u>Smith v. Wade</u>, 461 U.S. 30, 54 (1983). "The purpose of punitive damages is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." <u>Memphis Community School District</u>, 477 U.S. at 306 n.9. "The focus, in determining the propriety of punitive damages, is on the intent of the defendant and whether the defendant's conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." <u>Coleman v. Rahija</u>, 114 F.3d 778, 787 (8th Cir. 1997) (citing <u>Smith</u>, 461 U.S. at 54). Punitive damages are appropriate "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith</u>, 461 U.S. at 56. "A finding of deliberate indifference to a serious medical need, while establishing liability under § 1983, does not necessitate a finding of callous indifference warranting punitive damages." <u>Coleman</u>, 114 F.3d at 787.

     In this matter, punitive damages are not appropriate. Plaintiff failed to make the requisite showing of callous indifference. The Plaintiff's own witness, Nurse Kismet A. Mayo, stated that Defendant Voros' conduct did not exhibit such indifference.

///

///

8

1    In sum, this Court finds that judgment shall be entered in
2 favor of Plaintiff and against Defendant Voros.  Damages shall be
3 awarded for violation of 42 U.S.C. § 1983, the sum of $500.00 in
4 compensatory damages and $0 in punitive damages.
5    Any request for attorney's fees by Plaintiff, as prevailing
6 party herein, shall be made pursuant to Local Rule 293.
7    IT IS SO ORDERED.

9 Dated: March 26, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE